UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**DONNA JEAN MOORE**
    Plaintiff

v.   No. 5:09CV-00169-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by John Bell Whitesell. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 13, respectively. In addition, the plaintiff has filed a motion pursuant to local rules (LR) 83.11, seeking a judgment in her favor based upon the arguments of counsel and the administrative record, to which the defendant has not responded in opposition (Docket Entry No. 11). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on December 23, 2008, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II and Title XVI benefits, Judge Craig entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2011.

    2. The claimant has not engaged in substantial gainful activity since July 16, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease, right shoulder tendonitis, and a heart condition (20 CFR 404.1521 et seq. and 416.921 et seq.).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she should avoid above shoulder work. She should never kneel and crawl, and only occasionally stoop and crouch. She should avoid exposure to weather, extreme cold and heat, wetness, humidity, moving mechanical parts, electrical shock, high exposed places, and noxious fumes and odors. She is also required to use oxygen during the day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 20, 1969, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 16, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 17-22).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's

decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The VE testified that an individual who is restricted to "sedentary" work and having the non-exertional physical limitations stated in ALJ's Finding No. 5, supra, would retain the ability to perform a significant number of jobs in the national economy such as "sedentary" cashier and telemarketer (AR, pp. 328-329). Unless the plaintiff points the court to evidence in the administrative record that she suffers from an additional vocationally-significant restriction not contemplated by the foregoing vocational testimony (i.e., the limitations stated in Finding No. 5), which the ALJ was required to accept, the court should

affirm the ALJ's decision upon the strength of the vocational testimony. See *Varley v. Secretary*, supra. The plaintiff has identified no such restriction. Therefore, we shall recommend an affirmance of the Commissioner's final decision. The plaintiff's specific contentions shall be considered in turn.

The ALJ found that "[t]ransferability of job skills is not material to the determination of disability" in this case. Finding No. 9. The plaintiff's first contention upon judicial review is that the ALJ's finding that she can perform the jobs of "sedentary" cashier and telemarketer is not supported by substantial evidence because 1) those positions are described in the Dictionary of Occupational Titles (DOT) as "semi-skilled" positions with a specific vocational preparation (SVP) number of 3 and 2) the ALJ did not affirmatively find that she possesses transferable job skills. The magistrate judge concludes that the argument is unpersuasive for at least three reasons. First, although it is not of case-dispositive significance, it appears that the plaintiff does, in fact, have transferable job skills inasmuch as her past relevant work experience included working as an assistant manager at Dollar Tree supervising four other employees. The VE described this as SVP-4 work, i.e., work requiring greater skill than SVP-3 work (AR, p. 327). Second, assuming for the sake of argument that the plaintiff, in fact, has no transferable job skills acquired from past relevant work, that does not mean that she is incapable of performing semi-skilled work. Employers do not expect that workers enter the job knowing every aspect of the work the very first day. In other words, the skills required to hold a job may come from one's education, native intelligence, and life experience coupled with the normal training period that accompanies the beginning of most new jobs. The VE testified that SVP-3 work generally can be learned in 30 to 60 days on the job (AR, p. 329). In this case, there is no reason whatsoever to suppose that the

plaintiff lacks the ability to learn and perform the jobs of "sedentary" cashier and telemarketer. Third, the ALJ found no mental limitation. One would expect that a mentally unlimited person would be cable of learning to perform semi-skilled job duties.

The plaintiff's next argument is based upon the ALJ's statement that "with medical compliance including smoking cessation and weight loss, the claimant would be able to function at a higher level" (AR, p. 20). Having read the ALJ's decision as a whole, the magistrate judge interprets the statement as nothing more than a commonsensical truism or an innocuous commentary made in passing. There is no evidence that the ALJ's residual functional capacity (RFC) finding was based upon a projection or extrapolation in the ALJ's mind as to what the plaintiff's limitations would be if she stopped smoking and lost weight. As noted at the outset of our discussion, the plaintiff has failed to show that she has an actual limitation (as an obese smoker) in excess of those stated in Finding No. 5.

The plaintiff's final contention is that the ALJ erred in rejecting the opinions of her treating physician, Silviu Pasniciuc, as reflected in Dr. Pasniciuc's completion of the "medical source statement of ability to do work-related activities" form on November 24, 2008 (AR, pp. 274-277). Among other things, Dr. Pasniciuc found that the plaintiff would be unable to sit for no more than 2 hours (total) during an 8-hour period, and even during those brief periods of sitting, she would require elevation of the legs above the rest of the body 50% of the time, she would need to take unscheduled breaks, would be unable to maintain concentration and attention, and would require absences from work of more than four days per months (AR, pp. 275-276). The VE testified that acceptance of these rather extreme limitations would render the plaintiff unemployable (AR, pp. 329-330). The ALJ accepted Dr. Pasniciuc's findings only to the extent of

7

his RFC Finding No. 5. To the extent Dr. Pasniciuc opined additional, disabling limitations, the ALJ stated that he was not "persuaded to give controlling or significant weight to the opinion of Dr. Pasniciuc as his opinion is not supported by the record as a whole" (AR, p. 21).

A treating source's "medical opinion" is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The first or threshold issue is whether Dr. Pasniciuc's disabling opinions were true "medical opinions" as opposed to "medical source opinions on issues reserved to the Commissioner" as contemplated by subsection (e) of the foregoing regulations. The magistrate judge concludes that the question must be answered in the negative. Dr. Pasniciuc did not "know," in the sense of an objective medical fact, that if properly motivated, the plaintiff would require the disabling limitations he opined. Therefore, the court need not reach the issue of whether Dr. Pasniciuc's opinions are entitled to controlling weight. Alternatively, the undersigned concludes that the ALJ did not err in finding that Dr. Pasniciuc's opinions are not entitled to controlling weight because they are not supported by sufficient objective medical data and are inconsistent with other substantial medical and non-medical evidence in the administrative record.

## RECOMMENDATION

The magistrate judge RECOMMENDS that:

1. The plaintiff´s motion for judgment on the pleadings (Docket Entry No. 11) be DENIED.

2. The final decision of the Commissioner be AFFIRMED, and the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).